UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------
In re

    William A. Godios, Jr.                    Case No. 05-13488 K
    Barbara J. Godios

                          Debtors
------------------------------------------------------------------

## OPINION AND ORDER

        The U.S. Trustee's "substantial abuse" motion[1] under the pre-BAPCPA version of 11 U.S.C. § 707(b) presents this question: May hard-working upper-middle class parents of two high school seniors (they are twins) discharge nearly $60,000 of credit card debt in Chapter 7 for the sole and stated purpose of better positioning the family finances in preparation for large, anticipated, <u>discretionary</u> expenditures in providing a college education for the children? After a thorough hearing and fine advocacy on both sides, this question must be answered in the negative, and the case will be dismissed if not converted to Chapter 13.

        The question above is better understood with some fact-related background.

        The Debtors are "hard-working." Ms. Godios' "base salary," after 23 years at a nationally-prominent health insurer is $68,000. Mr. Godios is a State corrections officer whose salary is around $45,000. They do not live in an affluent suburb. They seem to have done well at their jobs and in providing for their family through honest effort, over a long period of time.

        "Sole and stated purpose" means that the Debtors have not suffered any job loss or other adversity. Though they have little equity in their home because of sizeable mortgages,

---

[1] See later discussion to the effect that the statute does not speak of abusive <u>debtors</u>, but rather whether the Court's failure to dismiss would result in a "substantial abuse" of Chapter 7 of the Code.

they have significant retirement accounts and have pensions to which to look forward. They drive late-model cars and they recently refurnished their home. They clearly could repay their unsecured debts in part without any sacrifice at all, as discussed later. They simply want to be in a financial position to pay what they expect will be "exorbitant" college expenses.[2]

The U.S. Trustee has appropriately emphasized that this § 707(b) "substantial abuse" motion is not to suggest that the Debtors are bad persons or ill-motivated. In this case, "substantial abuse" is "dog law" - - a term we were taught in law school. Just as a dog has no way of knowing it did wrong until it is punished, these Debtors could not have known that their request for Chapter 7 relief would be found to be abusive of Chapter 7.

These Debtors did not set out to abuse the law. The question, rather, is whether permitting this case to proceed to discharge under Chapter 7 would constitute a "substantial abuse" of what Chapter 7 is all about.

## APPLICABLE LAW

The petition here was filed prior to the effective date of the amendments implemented by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8; therefore, the amendments do not apply.

Chapter 7 of the Bankruptcy Code authorizes the discharge of an individual's personal liability on claims of creditors in exchange for the liquidation of the debtor's assets for

---

[2] Though there are some health problems, they are of long-standing and could have been budgeted-for.

the benefit of creditors. 11 U.S.C. §§ 541, 726 & 727. If granting the relief of discharge would constitute "substantial abuse," the Code authorizes the Court to dismiss a debtor's petition § 707(b). While the Code does not define substantial abuse, courts have generally sought to determine if the grant of discharge would result in equitable treatment of creditors. *Kornfield v. Schwartz (In re Kornfield),* 164 F.3d 778, 781 (2d Cir. 1999).

The duty to avoid the result of "substantial abuse" lies with the court. The relevant § 707(b) states in relevant part: "After notice and hearing, the *court*, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, *may dismiss a case* filed by an individual debtor under this chapter whose debts are primarily consumer debts *if it finds that the granting of relief would be a substantial abuse* of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor." (emphasis added).

The appropriate test of substantial abuse is comprised of two prongs that interrelate in the analysis: i) whether the debtor's income indicates the ability to repay and ii) whether a totality of circumstances indicates any aggravating or mitigating factors on the ability to repay. *Id.* at 780; *Green v. Staples (In re Green)*, 934 F.2d 568, 572 (4th Cir 1991) (collecting cases). The test is to be applied in light of the statutory presumption in favor of granting relief when a motion alleging substantial abuse is presented by the United States Trustee. *In re Marcoux*, 301 B.R. 381, 384 (Bankr. D. Conn. 2003).

In determining the ability to repay, a court considers the debtor's "disposable income" available under a hypothetical Chapter 13 plan, *In re Heffernan*, 242 B.R. 812, 816

(Bankr. D. Conn. 1999), notwithstanding that the election of such a plan remains with debtor, *In re Green*, 934 F.2d at 573. In determining the debtor's hypothetical "disposable income" the Court will consider adjustments that are particular to the case of each debtor. *In re Marcoux*, 301 B.R. at 386 (such equitable inquiry cannot be accomplished though a mechanical standard). Those adjustments are well within the scope of the Court's equitable inquiry. *In re Kornfield*, 164 F.3d at 784. Amongst those hypothetical adjustments are:

> i) retirement savings or contributions thereto, *In re Heffernan*, 242 B.R. at 818 (collecting cases indicating "overwhelming consensus" that retirement plan contributions are debtor's voluntary and discretionary expenditures), *In re Kornfield*, 164 F.3d at 784 (pension plan with substantial assets relevant to debtors' need to apply future income to retirement savings);
>
> ii) college tuition for the debtor's children, 242 B.R. at 817 (parent debtors' liability on college tuition loans is discretionary), 164 F.3d at 784 (appropriate for court to conclude that college age children have alternatives for college expenses other than placing burden on parents' creditors, citing *In re Gyuric*, 95 B.R. 639 (Bankr. D. Minn. 1989));
>
> iii) private school tuition, *In re Carlton*, 211 B.R. 468, 481, (Bankr. W.D.N.Y. 1997) (debtors' community offered suitable public education alternatives) *aff'd sub nom., In re Kornfield*, 214 B.R. 705 (W.D.N.Y. 1997), *aff'd* 164 F.3d 778.

The factors to be considered in completing the "totality of the circumstances" test include whether a calamitous event caused the bankruptcy and whether the debtor has incurred

cash advances and charges for consumer purchases far in excess of ability to pay. *In re Green*, 934 F.2d at 572, *In re Marcoux*, 301 B.R. at 387, *In re Kornfield,* 164 F.3d at 784. Finally, the question of whether the petition was filed in good faith is to be considered in every case. *Cf. In re Green*, 934 F.2d at 572.

### DISCUSSION

Applying the above, we find that even if these Debtors made no lifestyle changes at all, they have scheduled an average monthly excess of income over expenditures of over $200. If they simply deferred repayment of a retirement loan that they are paying, that would add $334 per month. $534 per month even for just 36 months in a Chapter 13 Plan would be nearly $20,000 paid-in toward repayment of their debts.

However, the cases above suggest that for § 707(b) purposes the Court must also view the private school tuition of $1120/mo., and the retirement <u>contributions</u> of $727/mo. as <u>discretionary</u> expenditures, as will be whatever they end up doing, financially, when college replaces their current tuition bill.

So with the sacrifice of deferring the further building of their retirement accounts and of letting the twins get their own college loans, $2381/mo. could be committed to repayment of unsecured debt, without any other lifestyle changes. That would be a 100% Chapter 13 Plan of a little over 2 years' duration. Indeed, these Debtors would not need Chapter 13 at all.

Although Chapter 7 is not exclusively for persons who have suffered adversity,[3] it is this writer's view that Chapter 7 is not a "financial planning" device to assure that the only sacrifices that ever need to be suffered in order to accomplish a debtor's life-style choices will be sacrifices that are to be suffered only by such a debtor's creditors.

These Debtors have used their incomes to provide much to themselves and their children. New cars, private school, pension funds, replacement furniture, home improvements. (Indeed, within the past two years they sold a motorcycle for $19,000 which they used for such furniture and improvements.)

Platitudes abound to the effect that bankruptcy affords the "honest but unfortunate" debtor a "fresh start," but not a "head start." These Debtors are honest, but not unfortunate. The don't need a "fresh start." What they hope for from the Court is a "head start" on their children's higher education. Mr. Godios' testimony is that they don't know where their kids will go to college - - "The applications are out, and I'd be happy [financially] with anything but the Ivy League." And paying for that education, he states "is my responsibility."

But what he asks of the Court is that his unsecured creditors get nothing so that he may undertake that responsibility. Were the Court to grant his and his wife's request, what would this Court say to the countless parents who believe that paying their debts is <u>also</u> a responsibility, and who therefore exhaust the "college fund" to do so? What would it say to the countless parents who must painfully say to their sons or daughters, "We have bills to pay. We

---

[3] As noted above, adversity is but one factor to be considered; its absence does not give rise to a "*per se*" conclusion.

can't afford to send you to an expensive college"?  (This writer had to say exactly that to a son who was accepted at one of the colleges in the so-called "'Little' Ivy League.")

And, most importantly, what would this Court say to the thousands of Chapter <u>13</u> debtors it sees every year who wish they were as fortunate as these Debtors?  People who are in Chapter <u>13</u> to prevent the loss of their home to a foreclosure occasioned by having taken a second mortgage to help their child through community college or another one of the very fine units of the State University of New York, where tuitions are but a third of most private universities?  Or people in Chapter 13 who wish that they had not lost their jobs, so that they could afford to <u>have</u> children at all?  Or to provide the basic necessities for the children they do have.

Again, these are fortunate Debtors.  Their reward for their honesty and hard work is that while jobs for their neighbors tumble down around those neighbors' heads, their jobs are stable and good-paying, and have been so for many years.  It seems that all of their children (two are grown, and of those, one is a gainfully-employed engineer and the other is a U.S. Marine on active duty in Iraq), have had the best of everything that could be expected from middle-class parents.  (At more than $ 110,000 per year, I would say "upper" middle class, in this locality.) (Again, the debts sought to be discharged are credit card debts that must have been used to provide good things for the family, there being no evidence to the contrary).  God-willing, they all will be safe, healthy and prosperous.

This family does not need the aid of a Chapter 7 discharge from this Court,

however much they might desire it,[4] and for this Court to permit same would constitute an abuse of Chapter 7 that is "substantial."

## CONCLUSION

The presumption in favor of the Debtors has been rebutted. The U.S. Trustee's Motion to Dismiss is granted. The Debtors shall have 10 days in which to convert to Chapter 13, if they so desire, or this case is Dismissed without further Order.

SO ORDERED.

Dated:    Buffalo, New York
          November 3, 2005

_____
U.S.B.J.

---

[4] That this case is distinguishable from cases involving calamity is obvious. But this case is also distinguishable from the hypothetical case of people just starting out in life who, having made unwise or naive decisions in the course of trying to establish themselves in an occupation or career, face the choice of putting their future on hold for three to five years in Chapter 13, or of availing themselves of the "fresh start" Congress envisioned. The distinction between such a hypothetical case and the case at Bar rests in the otherwise trite phrase, "What did you expect?" When the expectation had been of a good-paying job at the end of course of study or apprenticeship, and those expectations have been dashed, a "fresh start" in Chapter 7 may be appropriate. But not where, as here, a long course of calculated conduct turns out to present an inconvenience once it turns out that there is more one wants to do for one's child, or parent, or community.

It is also distinguishable from the hypothetical case of persons who, at any stage of life, made a terrible mistake that put them at risk for keeping body and soul together for the future. The enormous increase in filing by the elderly in this Court in recent years has been a source of alarm and sadness for this writer.